UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Mary Pat McCullough, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  12-cv-09359 |
| | ) | |
| Fraternal Order of Police, | ) | Judge John J. Tharp, Jr. |
| Chicago Lodge 7, | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| Defendant. | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT
OF HER MOTION TO PRECLUDE CERTAIN CLAIMS AND/OR DEFENSES**

Throughout the course of this litigation, Defendant has adamantly maintained that the report of the sexual harassment investigation prepared by the law firm of Asher, Gittler & D'Alba, together with other documents created as a result of a complaint of sexual harassment made by one of Plaintiff's co-workers, are protected by the attorney-client and work product privileges.  Plaintiff's Motion to Preclude Certain Claims and/or Defenses was filed on October 29, 2013.  Subsequently, on November 12, 2013, Defendant provided Plaintiff with its privilege log (**attached hereto as Exhibit A**).

It is Defendant's burden, as the party asserting the privileges, to establish that the requirements for invoking them have been met.  *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *Dawson v. New York Life Ins. Co.*, 901 F.Supp. 1362, 1366 (N.D. Ill. 1995). Defendant has not done so.  Further, even if the documents are attorney-client privileged or protected work product,  the privileges must be deemed waived, as Defendant's Response to Plaintiff's Request to Admit demonstrate  that there is a possibility that the sexual harassment investigation may come into play, either in a summary judgment motion or during trial.

I.  **DEFENDANT HAS NOT MET ITS BURDEN TO ESTABLISH THAT THE DOCUMENTS IT HAS WITHHELD ARE PROTECTED BY THE ATTORNEY-CLIENT OR WORK PRODUCT PRIVILEGES**

The Seventh Circuit has articulated the following test for determining whether the attorney-client privilege attaches to a communication:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Evans*, 113 F.3d at 1461 (quoting 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2292 (1961)). "(E)ach of these elements must be established as to each document, as the mere existence of an attorney-client relationship is not sufficient to cloak all communications with the privilege." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 86 (N.D. Ill. 1992).

The work product doctrine is broader than the attorney-client privilege, protecting from discovery "documents and tangible things that are prepared in anticipation of litigation." Fed.R.Civ.P. 26(b)(3)(A). The protection does not apply if the prospect of future litigation was remote at the time the document was created. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). "The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney . . . the privilege is not that broad." *Id.* To identify work product, courts are directed to determine "whether in light of the factual context the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Id.* at 1118-19.

## II. DEFENDANT'S ASSERTIONS OF ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES IN ITS RESPONSE ARE UNSUPPORTED BY THE RECORD

Defendant's argument that the Report[1] of the sexual harassment investigation is privileged is wholly unsupported by the record. There are no exhibits to Defendant's Response and no citations to any evidence. Defendant's unsupported argument and conclusory statements cannot serve to meet its burden to establish that all of the requirements for invoking the privileges have been met.

### A. The Attorney-Client Privilege Does Not Apply

Defendant's current position that the Report contains legal analysis of the sexual harassment investigation is a departure from its earlier position. A previous description of the Report, provided by Defendant to the Chicago Commission on Human Relations ("CCHR") and signed by Defendant's President, Michael K. Shields, presents a picture of an "Investigative Report" that is factual in nature (p. 4 of **Exhibit B, attached hereto**). The indication is that the Report was a draft because there were more witnesses to interview, the interview of the "target" of the investigation was not yet complete, and the investigator needed "further clarification" of a "number of discrepancies." These all point to fact gathering as the purpose of the investigation. Moreover, Defendant's Position Statement to the CCHR indicates that upon receipt of the Investigation Report, President Shields took it to a different law firm to determine what steps should be taken.

### B. The Work Product Privilege Does Not Apply

Likewise, with regard to its assertion of the work product privilege, Defendant has failed to sustain its burden of demonstrating that the documents at issue were created in anticipation of

---

[1] The "Report," as Defendant calls it, is likely described in Exhibit A at Bates Numbers 104-133 and 133-228. Defendant offers no response supporting a privilege as to the other documents identified in its privilege log.

3

litigation. "[I]nvestigatory reports and materials are not protected by the attorney-client or work product doctrine merely because they are provided to, or prepared by, counsel. *Koumoulis v. Independent Financial Marketing Group, Inc.*, __ F.R.D. __, No. 10-CV-0887 (PKC)(VMS) at p. 10 (E.D.N.Y. Nov. 1, 2013) (*citing One Beacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271 (RWS), 2006 WL 3771010, at *5-6 (S.D.N.Y. Dec. 15, 2006)). (*Koumoulis* is **attached hereto as Exhibit C**). *See also Payton v. New Jersey Turnpike Authority*, 691 A.2d 321, 334 (N.J. 1997) (disagreeing with a blanket contention that "the attorney-client privilege protects the entire investigatory process because attorneys employed by defendant participated in the investigation.").

The case cited by Defendant, *Sandra T.E. v. South Berwyn School Dist.* 100, 600 F.3d 612 (7th Cir. 2009) does not support its position. In the *South Berwyn* lawsuit, the investigation was conducted and report prepared only <u>after</u> civil and criminal actions had been commenced. In this case, administrative charges were only filed after the Report was prepared. There is absolutely no evidence in this record that anyone had threatened litigation related to the allegations of sexual harassment nor that any litigation was reasonably anticipated at the time the Report was prepared. Neither Plaintiff nor her co-worker had retained counsel prior to or during the investigation. Importantly, in *South Berwyn*, the engagement letter between the law firm hired to represent the School Board, Sidley Austin, and the Board specifically provided that Sidley was to "investigate the response of the school administration to allegations of sexual abuse of students" and to "provide legal services in connection with" the investigation. There is no such evidence in this case. Additionally, in *South Berwyn*, there was evidence that during the confidential interviews with school district employees, Sidley attorneys provided *Upjohn* warnings. Defendant has not contended that such warnings were given in this case.

4

When the purpose of the investigation was, as here, to enforce an employer's sexual harassment policy or to comply with its legal duty to investigate and remedy the allegations, then the privilege does not apply. *See Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 317 (N.D. Ill. 2010); *accord Morgan v. City of Federal Way*, 166 Wash.2d 747, ¶¶ 7-8 (2009); *Payton v. New Jersey Turnpike Authority*, 691 A.2d 321, 334 (N.J. 1997). Either one or both of these purposes was the reason the documents at issue were created. At the time the written sexual harassment claim by Plaintiff's co-worker was presented, Defendant had a policy referred to in Exhibit B hereto that provided in part:

> The Lodge recognizes that victims of sexual harassment may be reluctant to complain or report to their supervisors through normal procedures. Therefore, any employee who believes that he or she has been sexually harassed immediately shall inform a supervisory or the President. * * * The President [or his/her designee] or the Office Manager will conduct an investigation based on the written allegation. *** Upon conclusion of the investigation the President, his/her designee or the Office Manager may issue a written decision informing the involved individuals of the results of the investigation and disciplinary action to be taken, if any. *** Lodge 7 considers all complaints of sexual harassment and any remedial efforts taken as strictly confidential. It is recognized however that in the event complaints of sexual harassment lead to litigation, certain information may be subject to discovery. . . .

In light of Defendant's obligations under its sexual harassment policy, any of the documents at issue likely would have been prepared even if litigation was never anticipated

### III. EVEN IF THE DOCUMENTS ARE PRIVILEGED, DEFENDANT HAS WAIVED THE PRIVILEGES BY PLACING THE INVESTIGATION "IN ISSUE"

The protections of Title VII of the Civil Rights Act of 1964 have been extended to sexual harassment claims. Where the harassing employee is the victim's co-employee, the employer may only be held liable "for acts sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can

5

show that it took immediate and appropriate corrective action." 29 C.F.R. § 1604.11(d); *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 464 (7th Cir. 1990). Where the harassing employee is the victim's supervisor, the employer is presumptively liable unless it demonstrates both that it exercised reasonable care to prevent and promptly correct the supervisor's sexual harassment and that the victim unreasonably failed to take advantage of any corrective or preventive opportunities provided by the employer or to otherwise avoid harm. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) [collectively, the "Affirmative Defenses"]. Thus, in most sexual harassment cases, the employer's liability often depends on what it knew and how it handled that knowledge.

When an employer places the reasonableness of its conduct following notification of the sexual harassment allegations at issue, it waives the attorney-client privilege. *Johnson v. Rauland-Borg Corp.*, 961 F.Supp. 208, 211 (N.D. Ill. 1997); *Brownwell v. Roadway Package System, Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y. 1999). Where "the employer defends itself by relying upon the reasonableness of its response to the victim's allegations, the adequacy of the investigation becomes critical to the issue of liability." *Brownwell*, 185 F.R.D. at 25. The only way that Plaintiff, or the finder of fact, can determine the reasonableness of Defendant's investigation is through full disclosure of the contents thereof. *Id*. Defendant has illustrated by its Response to Plaintiff's Request to Admit (Exhibit B to Plaintiff's Motion to Preclude Certain Claims and/or Defenses) that it may offer evidence in this case that it took reasonable care to promptly investigate and correct the behavior reported by Plaintiff's co-worker. And, based on its anticipated defense that it took immediate and appropriate corrective action, it is impossible to envision that this will not in fact play out at either the summary judgment stage or at trial or both.

Several courts considering the issue have found that asserting the Affirmative Defenses "waives any attorney-client privilege that might apply to a defendant's investigation documents or communications." *See Musa-Muaremi v. Florist's Transworld Delivery, Inc.*, 270 F.R.D. 312, 319 (N.D. Ill. 2010) (*citing E.E.O.C v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 611 (D.Colo. 2008); *Jones v. Rabanco, Ltd.,* No. C03-3195P, 2006 WL 2401270 at *4 (W.D. Wash. Aug. 18, 2006); *Walker v. County of Contra Costa*, 227 F.R.D. 240, 245-246 (E.D.N.Y. 2001); *Brownwell v. Roadway Package System, Inc.,* 185 F.R.D. 19, 25 (N.D.N.Y. 1999)). Even though Defendant has made the tactical decision not plead the Affirmative Defenses, the issues are relevant to this case and the reasonableness of Defendant's response. *See Payton v. New Jersey Turnpike Authority*, 691 A.2d 321, 327 (N.J. 1997) ("if effectiveness is gauged by the *process* of the investigation – including timeliness, thoroughness, attitude toward the allegedly harassed employee, and the like – as well as by the result of the investigation, then the documents are clearly relevant and discoverable.").

### IV. EVEN IF THE DOCUMENTS ARE PRIVILEGED, THE PRIVILEGES MUST IN FAIRNESS YIELD TO THE PLAINTIFF'S ABILITY TO EFFECTIVELY PREPARE HER SEXUAL HARASSMENT CASE

By denying that Plaintiff engaged in protected activity and by conceding that it may offer evidence that it took adequate steps to investigate and correct the alleged sexual harassment, Defendant has waived its right to invoke the privileges. Defendant attempts to use the privilege as both a sword and a shield. Equity requires that Plaintiff be permitted to explore the parameters of the investigation in order to counter Defendant's claims about its investigation. Without having evidence of the actual content of the investigation, neither Plaintiff nor the finder of fact can discern its adequacy. A party waives the attorney-client privilege where it "injects into the case an issue that in fairness requires examination of otherwise protected

7

communications." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) (*citing GAB Bus. Servs., Inc. 627*, 809 F.2d 755, 762 (11th Cir. 1987). These issues need not necessarily be affirmative defenses. *Id.*

Defendant's Response misses the point. Plaintiff's concern is <u>not</u> that Defendant will <u>merely</u> <u>deny</u> that Plaintiff established that Defendant failed to take immediate and appropriate corrective action. Plaintiff's concern is that Defendant has knowledge of all of the details of whatever process the investigation took, is keeping this knowledge for its own exclusive benefit, and all the while precluding full disclosure of the information. Defendant cannot simply deny that it failed to take immediate and appropriate corrective action. Defendant would necessarily be injecting new facts – details about its investigation process of which Plaintiff currently has no knowledge – into the case. This is manifestly unfair to Plaintiff. A party is prohibited from using the attorney-client privilege "'to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.'" *Id*. at 1417 (*quoting United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)). "It would be unfair to allow an employer to hide its investigations and remedial efforts in the case up to the point of trial when it intends to use related evidence of its remedial efforts to evade liability." *Musa-Muaremi,* 270 F.R.D at 319.

WHEREFORE, Plaintiff respectfully requests that this Court order that Defendant shall be precluded from offering evidence in this case regarding the sexual harassment investigation. Alternatively, Plaintiff requests that this Court order Defendant to respond in full to Plaintiff's First Set of Interrogatories Nos. 7, 13, 17, 18, 20, 21, and 23.

                                                 Respectfully submitted,

                                                 <u>s/ Lori D. Ecker</u>

Lori D. Ecker
Law Office of Lori D. Ecker
120 N. LaSalle St., Suite 1050
Chicago, IL 60602
312/855-1880
loriecker@ameritech.net