**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARY PAT McCULLOUGH,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 9359 |
| | ) | |
| v. | ) | Judge John J. Tharp |
| | ) | |
| **FRATERNAL ORDER OF POLICE,** | ) | Magistrate Judge Jeffrey Cole |
| **CHICAGO LODGE 7,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

**1.**

Mary Pat McCullough was employed by the Fraternal Order of Police, Chicago Lodge 7, as secretary to the President from June 2002 until April 5, 2011, when she was fired allegedly because the newly elected President decided to bring in a personal secretary of his own choosing. Following her firing, the FOP sued her in state court alleging that she had misappropriated information from her work computer by "burning" a CD containing confidential files on her last day of employment. Ms. McCullough vigorously denied that charge and contended that the FOP's supposed "proof" showed that she had not done so.

Ms. McCullough contends that during her employment she and other female employees were subjected to sexual harassment and a hostile working environment, and that her entreaties to supervisory employees and the FOP's President, Mark Donahue, fell on deaf ears. (*First Amended Cplt.*, ¶10, *et seq.*).Her friend and co-worker, Marie Marrero, was also fired by the FOP in late September 2011 for allegedly fabricating evidence against her supervisor whom she had claimed had

sexually harassed her for a number of years.

Ms. Marrero and Ms. McCullough hired Catherine Caporusso to represent them in filing charges with against the FOP the EEOC. On April 7, 2011, Ms. Marrero and Ms. McCullough went to the EEOC. Ms. Marrero filed her Charge against the FOP that day. About a week later, Ms. McCullough filed her Charge with the EEOC. The EEOC visits were followed by appearances at the Chicago Commission on Human Relations.

On July 3, 2012, Ms. Caporusso, on behalf of Ms. Marrero, filed the Complaint in this court against the FOP. (12 C 5280). Ms. Marrero's Complaint alleges that she was sexually harassed by her supervisor, Mr. Paul Geiger, a lawyer at the FOP, from the time she began her employment with the FOP in April 2007. (*Third Amended Complaint,* ¶¶5-6). While the Complaint adverts generally to inappropriate, sexually oriented conduct by the FOP's management and employees. (*Id.* at ¶17), its focus is on Ms. Marrero's supervisor's harassment.

The FOP filed a counterclaim in which it accused Ms. Marrero of fabricating evidence in connection with her complaints to the FOP of sexual harassment by her supervisor. The counterclaim alleged that in January 2011, Ms. Marrero falsely represented that she had received a dictation tape containing a sexually harassing comment by one of the attorneys who had complained about her work performance. The counterclaim alleged that the tape was found to have been re-recorded from a separate dictation tape that was made before she even was employed at the FOP and that a "forensic analysis determined that the tape ... was dubbed and carefully manipulated."(*Counterclaim*, Dkt. 18, ¶12). There is no allegation in this or the Marrero case that Ms. McCullough had any involvement in the alleged doctoring of the tape.

**2.**

At some point in 2012, Ms. Caporusso ceased representing Ms. McCullough, who filed the present case against the FOP, *pro se,* on November 21, 2012.[1] During the period in which Ms. Marrero and Ms. McCullough had a lawyer-client relationship with Ms. Caporusso, they communicated with each other frequently by email, and, according to Ms. McCullough, shared their "recollections about sexually harassing conduct at the FOP," "assisted each other with drafting documents, and shared theories and "common strategy, ...common tactics,...the possibility of settlement,...settlement goals, etc." (*Pl. Br.*, Declaration of Mary Pat McCullough, Ex A,¶13). The Declaration does not say that these activities were undertaken at the behest of their joint lawyer, and there is no Declaration from Ms. Caporusso to support any claim that the email exchanges were at her behest. All that Ms. McCullough's Declaration says is that the listed activities occurred during the temporal period of the joint representation.

The defendant sought discovery from Ms. McCullough of any communications between her and Ms. Marrero relating to the claimed sexual harassment. Ms. McCullough resisted, claiming that the email exchanges were privileged under the "common interest doctrine." By plaintiff's counsel's original estimate, there were about 1,000 emails. No privilege log was produced, although pursuant to my order, two finally were prepared. Ultimately, a number of the emails were turned over to the defense, and the remainder were submitted for my *in camera* review. Some 400 emails between Ms. McCullough and Ms. Marrero remain in dispute.[2]

The plaintiff initially contended that Ms. Caporusso was the lawyer for her and Ms. Marrero

---

[1] Later, Ms. Ecker became her lawyer.

[2] This is the estimate of plaintiff's counsel.

from April 2011 to November 2012 (*Pl. Br.*, at 2), and that any communications in that period between the three were privileged under the "common interest doctrine." That statement proved to be quite inaccurate. According to a November 2012 email from the plaintiff, herself, Ms. Caporusso had ceased representing her "many months" earlier. (*Defendant. Response* at 3).[3] How many months, the plaintiff's email did not say. This is a conspicuous failing since the plaintiff's argument turns on her claim that during the period April 2011 through November 2012, she and Ms. Marrero were jointly represented by Ms. Caporusso. Thus, as the party claiming privilege, it was the plaintiff's burden to prove the dates of the joint representation.[4]

Given the language of some of the cases, Ms. McCullough's brief understandably has conflated the "common interest doctrine" and the "joint lawyer" doctrine. The two, however are different and must not be confused. *See infra* at 6. Since both require an understanding of the attorney/client privilege, that is where we begin.

## ANALYSIS

### A.
### The Attorney Client Privilege

The attorney-client privilege is the oldest of the recognized privileges for confidential communications known to the common law. *Jaffee v. Redmond*, 518 U.S. 1, 11 (1996); *Upjohn Co.*

---

[3] The privilege log shows that the last email between Ms. McCullough and Ms. Caporusso was on November 20, 2012. But, by the plaintiff's own admission, Ms. Caporusso could not have been her lawyer then, the representation having ceased "many months" earlier.

[4] As the plaintiff's argument hinged on the claimed joint representation by Ms. Caporusso of Ms. McCullough and Ms. Marrero, I instructed plaintiff, among other things, to identify the dates she and Ms. Marrero were jointly represented as reflected in the record. Ms. McCullough has filed a document entitled "Citations to the Record." But the references are merely to her own lawyer's unsupported statements either in hearings or in filings. Thus, the only record evidence is that she and Ms. Marrero were simultaneously represented by Ms. Caporusso from April 2011 to a date "many months" before November 2012.

4

*v. United States,* 449 U.S. 383, 389 (1981). Deeply rooted in public policy, *In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir.1997), and playing a "vital role" in the administration of justice, *American Nat. Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 878 (7th Cir.2005), it remains one of the most carefully guarded privileges. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). The privilege's central concern – and its ultimate justification – is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Without that frankness, sound legal advice is impossible, and without informed advice, the ultimate goal of the attorney-client privilege is unattainable. *Upjohn*, 449 U.S. at 389.

The protection of the privilege extends to confidential communications made by a client to his lawyer "[w]here legal advice of any kind is sought...from a professional legal advisor in his capacity as such." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir.2000). *See also United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir.1997). Although the privilege is deemed generally to apply only to communications by the client, statements made by the lawyer to the client will be protected where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client. *Rehling,* 207 F.3d at 1019.

Knowing disclosure to a third party almost invariably surrenders the privilege. *United States v. Nobles,* 422 U.S. 225, 239 (1975); *United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013). This is so despite the client's subjective intention that it not be waived. *Jenkins*, 487 F.3d at 490; 8

Wigmore, Evidence § 2327.[5] And simply copying a lawyer on an otherwise nonprivileged communication will not transform the non-privileged document into a privileged one. *See, e.g., In re Avantel*, *S.A*., 343 F.3d 311, 321, n. 11 (5th Cir.2003); *In re Human Tissue Products Liability Litigation,* 255 F.R.D. 151, 164 (D.N.J. 2008); *Bell Microproducts, Inc. v. Relational Funding Corp.*, 2002 WL 31133195, at * 1 (N.D.Ill. 2002)(instruction from an attorney to employees to copy him as a recipient on any emails or documents in order to assure attorney-client privilege was not by itself enough to make the document privileged).[6]

Since the privilege, like all testimonial privileges and all exclusionary rules, makes the search for truth more difficult by preventing disclosure of what is often exceedingly relevant and probative information, it is narrowly construed, *Shaffer v. American Medical Ass'n,* 662 F.3d 439, 446 (7th Cir. 2011), and is limited to those instances where it is necessary to achieve its purposes. *See Pierce County, Wash. v. Guillen*, 537 U.S. 129, 144–145 (2003); *University of Pennsylvania v. EEOC*, 493 U.S. 182, 185 (1990); *Fisher v. United States*, 425 U.S. 391, 403 (1976)("'Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for the truth."); *United States v. Nixon*, 418 U.S. 683, 710 (1974).[7]

---

[5] Plaintiff's claim that there was an "understanding that her communications with Ms. Marrero would "be privileged" (*Pl. Br*. at 7) is thus unavailing. Moreover, Ms. McCullough does not explain the source of her claimed "understanding that their claims were really part of one case," as she alleges in her affidavit. (*Id.* Ex. A, ¶14).

[6] *See also, Steele v. Lincoln Financial Group,* 2007 WL 1052495, at * 2 (N.D.Ill.2007); *Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist*., 2006 WL 2255538, 2 (E.D.Cal.2006); *U.S. ex rel. Fields v. Sherman Health Systems,* 2004 WL 905934, 2 (N.D.Ill.2004)

[7] *See also Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir.2007); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983); *Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 323 (7th Cir. 1963).

**B.**
**The Joint Lawyer And The Common Interest Doctrines**

**1.**
**The Joint Lawyer Doctrine**

It is important to note that the joint lawyer and the "common interest" doctrines are distinct. "[W]hile the Restatement [(Third) of the Law Governing Lawyers] confusingly uses the term 'common interest' to describe the congruence of the parties' interests in both co-client and community-of-interest situations, the concepts are not the same." *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 362-63 and n. 18 (3rd Cir. 2007). See also *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.,* 295 F.R.D. 550, 594 (S.D.Fla. 2013); *Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC,* 736 F.Supp.2d 353, 362 (D.Mass.2010).

Under the joint lawyer doctrine, when two or more persons each having an interest in some problem, or situation, jointly consult an attorney, they necessarily agree to share all information related to the matter of common interest with each other. *In re Teleglobe Commc'ns Corp.,* 493 F.3d at 366. Thus, their *otherwise privileged communications* with the attorney – i.e. those that qualify as privileged under the attorney/client privilege -- though known to each other, will be privileged as to outsiders, but not *inter se. See F.D.I.C. v. Ogden Corp.* 202 F.3d 454, 461 (1st Cir.2000); 8 John Henry Wigmore, Wigmore on Evidence § 2312 at 603–09 (McNaughton rev.1961); Restatement (Third) of the Law Governing Lawyers 75 (2000).

Further, as the Third Circuit has explained in some detail, the scope of the joint client or co-client doctrine is circumscribed by the "limited congruence of the clients' interests." *In re Teleglobe Commc'ns Corp.,* 493 F.3d at 362-63. Because co-clients agree to share all information related to the matter of common interest with each other and to employ the same attorney, their legal interests

7

"must be identical (or nearly so) in order that an attorney can represent them all with the candor, vigor, and loyalty that our ethics require." *Id.* at 366 (parenthesis in original). *See also In re Grand Jury Subpoena #??06-1*, 274 Fed.Appx. 306, 311 (4th Cir. 2008); *F.D.I.C.*, 202 F.3d at 461. Thus, simply because two individuals choose to be represented by the same lawyer, the requisite commonality of interest required to make the doctrine applicable is not thereby assured. Phrased differently, "'[c]oncurrent representation of two clients is not enough to make them joint clients for purpose of the privilege.'" *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,* 230 F.R.D. 398, 417 (D.Md. 2005).

In this case, the interests of Ms. Marrero and Ms. McCullough, while not "identical," were sufficiently congruent that the joint lawyer doctrine can apply to otherwise privileged communications written during the period that Ms. McCullough had an attorney client relationship with Ms. Marrero. But that relationship ended by July 1, 2012. As discussed earlier, Ms. McCullough, herself, stated in a November 2012 email that it had been "many months" since Ms. Caporusso had been her lawyer. It is impossible to know precisely what Ms. McCullough meant by "many months." But any uncertainty must be resolved against her since, as the party with the burden to prove the existence of an attorney client relationship with Ms. Caporusso, she had to show the precise period of time in which she had an attorney-client relationship with Ms. Caporusso. *Shaffer,* 662 F.3d at 446. That, she has not done.

The five-month period between July 1 and the date in November when the "many months" email was written can fairly be described as "many months" and accords with the available evidence as to when the relationship likely ended. Ms. Marrero filed her Complaint in this court on July 3, 2012. By then, her involvement with representing her two clients at the EEOC was over. A July 24th

email from Ms. McCullough to Ms. Caporusso and Ms. Marrero refers to interviews she would be having with lawyers the next day in Chicago. This was almost three weeks after Ms. Caporusso had filed a complaint in this court on behalf of Ms. Marrero. A September 6th email from Mc. McCullough to Ms. Marrero states: "Marie, please remember that we still have a preservation order in place and our communications could be subject to discovery." Since Ms. McCullough has said that it was her "understanding that her communications with Ms. Marrero would be privileged," (*Pl. Br.* at 7), it is a fair, if not necessary, inference that her relationship with Ms. Caporusso had come to an end, otherwise she would not have been concerned about discovery of their emails.

To the extent that Ms. McCullough was represented by Ms. Caporusso after June 30, 2012, Ms. McCullough simply hasn't proved it. Therefore, no email after that date is immune from discovery.

**2.**

**The Common Interest Doctrine**

The "common interest doctrine" generally involves individuals represented by separate counsel, not, as here, by the same lawyer. *In re Teleglobe Communications Corp.*, 493 F.3d at 365-366. The doctrine allows attorneys representing different clients with identical legal interests to share *otherwise privileged* information without a resultant waiver. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). *See also In re Teleglobe Communications Corp.*, 493 F.3d at 364. The common interest doctrine is not, itself, a species of privilege; it is an exception to the general and familiar rule of waiver, which obtains when a client communicates with his attorney in the presence of a third person or shares privileged communications with a third party. *BDO Seidman, LLP*, 492 F.3d at 816.

9

The doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Bay State Ambulance and Hosp. Rental Serv.,* 874 F.2d 20, 28 (1st Cir.1989). *See also Evans*, 113 F.3d at 1467; *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979)("Therefore, waiver is not to be inferred from the disclosure in confidence to a co-party's attorney for a common purpose."); *cert. denied*, 444 U.S. 833 (1979); *United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985); *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2nd Cir.1989).

"[T]o be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest." *In re Teleglobe Communications Corp.*, 493 F.3d at 364. (Emphasis supplied). Sharing a privileged communication directly with a member of the community of interest may destroy the privilege. *Id.* And, for the doctrine to apply, and the person with whom the privileged information is shared with must have an *identical*—not merely similar—*legal* interest in the subject matter of the communication, which must be made in the course of furthering the ongoing, common enterprise. *BDO Seidman*, 492 F.3d at 816; *Pampered Chef v. Alexanian,* 2010 WL 3602376, at *5 (N.D.Ill. 2010).

It would appear to follow that members of the interested "community" are not free to share recollections and pool information on their own without losing the protections of the doctrine, and, as the above cases reflect, a number of courts have so held. They have recognized that communications between those claiming a common interest in a matter will not escape the waiver doctrine if they occurred in the absence of an attorney or were not directed by an attorney. *See United States v. Doe*, 429 F.3d 450, 453 (3rd Cir. 2005)("common interest privilege allows for two

clients to discuss their affairs with a lawyer, protected by the attorney-client privilege, so long as they have an "identical (or nearly identical) legal interest as opposed to a merely similar interest."); *United States v. Austin,* 416 F.3d 1016, 1019 (9th Cir.2005)(district court held that joint defense privilege was inapplicable where conversations between incarcerated defendants made outside counsel's presence; court of appeals refused to rule on that issue); *United States v. Gotti*, 771 F.Supp. 535, 545 (E.D.N.Y. 1991)(joint defense privilege was inapplicable where conversations occurred outside counsel's presence); *Zitzka v. Village of Westmont*, 2009 WL 1346256, 2 (N.D.Ill. 2009). Here, there is no proof that the sharing of recollections between Ms. McCullough and Ms. Marrero were the result of instructions from Ms. Caporusso. Ms. McCullough's Declaration makes no such assertion, and tellingly there is no declaration from Ms. Caporusso or Ms. Marrero.

Similarly, it has been held that merely because co-parties may reiterate statements previously confided to their attorneys does not render them protected and immune from waiver. *In re Teleglobe Communications Corp.*, 493 F.3d at 365 ("Because the common-interest privilege is an exception to the disclosure rule, which exists to prevent abuse, the privilege should not be used as a *post hoc* justification for a client's impermissible disclosures. The attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies."); *DeFazio v. Hollister, Inc.,* 2008 WL 4952481, 1 (E.D.Cal. 2008); *Schachar v. American Academy of Opthalmology,* 106 F.R.D. 187, 192 (N.D.Ill. 1985). *But compare In re Grand Jury Subpoenas, 89–3 & 89–4*, 902 F.2d 244, 249 (4th Cir.1990)( "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims" without waiving privileged attorney-client

communications.).

Unless the party asserting the "common interest" establishes that the withheld communications or documents were otherwise privileged, the "common interest" doctrine does not come into play. *See In re Pacific Pictures Corp.*, 679 F.3d at 1128-1131*; Pampered Chef,* 737 F.Supp.2d at 968; *Dexia Credit Local v. Rogan,* 231 F.R.D. 268, 273-274 (N.D.Ill.2004); *Gulf Islands Leasing, Inc v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 470 (S.D.N.Y. 2003); *Metro Waste Water Reclamation District v. Cont'l Cas. Co.*, 142 F.R.D. 471, 478 (D.Colo. 1992). Hence, a direct communication between two parties each having the requisite identical legal interest in the litigation, to be immune from discovery must involve one party seeking confidential information from the other on behalf of an attorney or relaying confidential information to the other on behalf of an attorney. *Zitzka*, 2009 WL 1346256 at 2.[8]

By contrast, statements by parties concerning their personal views, recollections, and opinions unconnected with communications with counsel are not subject to protection under the common interest doctrine. *Id. See United States v. Bay State Ambulance and Hosp. Rental Serv.,* 874 F.2d 20, 28 (1st Cir.1989)(The common interest doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.")

The rationale underlying the "common interest" doctrine accounts for the Seventh Circuit's insistence that the parties claiming protection must share a common *legal* interest. The "common

---

[8] A third form of protected communication would occur when parties are communicating work product that is related to the litigation. While *Zitzka* phrases the three possibilities in the conjunctive, it is clear that the opinion meant to phrase its position disjunctively. Otherwise, in order for there to be protection, it would not be enough that a party merely sought or relayed information on behalf of an attorney. It would also be necessary that there be a transmission of information qualifying under the work-product doctrine. That plainly could not have been the intent of the *Zitzka* opinion.

interest" doctrine is designed to encourage "parties with a shared legal interest to seek legal 'assistance in order to meet legal requirements and to plan their conduct' accordingly." *BDO Seidman,* 492 F.3d at 815; *Pampered Chef,* 737 F.Supp.2d at 964. That planning serves the public interest by advancing compliance with the law, "facilitating the administration of justice" and averting litigation. *BDO Seidman*, 492 F.3d at 816.

In this, as in most Circuits, the "common interest" doctrine will only apply "where the parties undertake a joint effort with respect to a common legal interest." *BDO Seidman*, 492 F.3d at 815-16. A shared rooting interest in the "successful outcome of a case" is not a common *legal* interest. *See Miller UK Ltd. v. Caterpillar, Inc*., _F.Supp. 2d, _, 2014 WL 67340, 12 (N.D.Ill.2014)(citing among others*, In re Pacific Pictures Corp*., 679 F.3d at 1129-1130; *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir.1964); *Leader Technologies, Inc*., 719 F.Supp.2d at 376; *Berger v. Seyfarth Shaw LLP,* 2008 WL 4681834, 2 (N.D. Cal. 2008); *Islands Leasing, Inc,* 215 F.R.D. at 473; *Baby Neal v. Casey,* 1990 WL 163194, 2 (E.D.Pa. 1990).

Ms. McCullough and Ms. Marrero no doubt had a common interest in seeing the FOP punished for what they perceived to be the wrongs each of them allegedly suffered. If that were all, it would not constitute the required identity of legal interest required by the cases. *See also Gulf Islands Leasing, Inc.*, 215 F.R.D. at 473; *SR Int'l Business Ins. Co. Ltd. v. World Trade Center Properties,* 2002 WL 1334821, at *3 (S.D.N.Y. 2002)(and cases cited)("[s]haring a desire to succeed in an action does not create a 'common interest'").

Although it is a close question, the interests of Ms. McCullough and Ms. Marrero are not "identical, legal interests."[9] While the Complaints in both cases allege generally that there was sexual harassment and discrimination at the FOP, Ms. Marrero's complaint is dominated by her allegations regarding her supervisor's harassment.[10] Ms. McCullough's Complaint does not involve him. Thus, the "common interest" doctrine is not applicable here.

Even if the interests were "identical, legal interests," the doctrine is not applicable here. First, there is only one lawyer, not multiple lawyers. Second, many of the emails do not involve the transmission of "otherwise privileged" communications either from one of them to Ms. Caporusso or from Ms. Caporusso to either or both of them. That is, they do not seek legal advice from Ms. Caporusso; they are merely reflecting on past events. Merely copying Ms. Caporusso on their emails or showing her as an additional addressee does not make their communications "otherwise privileged."

## C.
## The Emails At Issue

### 1.
### General Observations

The plaintiff's counsel has provided a 21-page log of the emails involved in the present dispute. The first one is dated April 25, 2011 and the last, November 18, 2012. The emails may be divided into various groupings: It is assumed, unless otherwise indicated, that the emails related to

---

[9] It is of no moment that the cases are separate, since the "common interest" doctrine is not limited to formal parties to litigation. *BDO Seidman, LLP,* 492 F.3d at 815.

[10] A favorable decision for either plaintiff might have some partial, collateral estoppel effect in the other's case, depending on the proofs, the jury instructions, and answers to any special interrogatories. *See* Rule 49, F.R.C.P. But since this is not an argument made by Ms. McCullough, we need not pursue its implications for the question of whether Ms. McCullough and Ms. Marrero have "identical legal interests."

some aspect of the alleged sexual harassment at the FOP.

## 2.
## Emails By Group

1) <u>Emails prepared after June 30, 2012</u>: As discussed earlier, any communications after that date are not privileged and thus not immune from discovery.

2) <u>Emails in which Ms. Caporusso was the author and Ms. Marrero or Ms. McCullough was the only recipient and which were otherwise privileged under the attorney client privilege</u>: These (pre-July 1) documents would be covered by the attorney/client privilege. The joint lawyer doctrine would allow either Ms. McCullough or Ms. Marrero to share the email or its contents with the other.

3).<u>Emails in which Ms. Caporusso was the author and Ms. Marrero or Ms. McCullough was the only recipient and the non-addressee was copied on the email and which were otherwise privileged under the attorney client privilege</u>. These (pre-July 1) emails would be covered by the joint attorney doctrine.

4) <u>Emails sent by Ms. Caporusso jointly to Ms. McCullough and Ms. Marrero which were otherwise privileged under the attorney client privilege</u>: These emails fall within the joint attorney doctrine, so long as prepared prior to July 1, 2012.

5) <u>Emails between Ms. McCullough and Ms. Marrero on which Ms. Caporusso is not copied</u>: For the reasons discussed earlier, these emails do not fall within either the joint lawyer doctrine (either before or after June 30, 2012) or the common interest doctrine. As to the latter date, Ms. McCullough has not shown that she was in fact represented by Ms. Caporusso. As to emails written before then, recollections and discussions of events that had occurred in the relevant time period of the case are not immune from discovery under either the joint lawyer or common interest doctrine since such discussions are not otherwise privileged.

6) <u>Emails from Ms. Caporusso to otherwise unidentified individuals</u>: Where the privilege logs do not show the recipient, the emails must be turned over since Ms. McCullough has not sustained her burden of proof.

7) <u>Emails between Ms. McCullough and Ms. Marrero on which Ms. Caporusso is copied</u>: Copying one's lawyer on a letter does not, itself, make the communication privileged. Discussions between two clients in which they simply share recollections about relevant events do not qualify as "otherwise privileged communications" since they do not seek legal advice. They are, precisely what they purport to be: a sharing of recollections.

8) <u>Emails from the FOP to Ms. Caporusso</u>: These are not privileged and must be produced.

9) <u>Emails from Ms. Caporusso that merely transmit court orders or information received from the FOP or a court or agency</u>: These are not privileged and must be produced

10) <u>Emails of 7/5/12 and 7/8/12. regarding the editing of a press release:</u> These emails are not otherwise privileged and thus are not immune from discovery. *Lauth Group, Inc. v. Grasso,* 2008 WL 926631, 3 (S.D.Ind. 2008); *Padgett v. City of Monte Sereno,* 2007 WL 4554322, 2 (N.D.Cal. 2007).

11) The emails of 5/18/11, 5/23/11, 5/24/11, 5/25/14, 6/3/11, 6/4/11, 6/13/11, 6/14/11, 6/23/11, 8/26/11, 12/29/11, 3/5/12, 2/28/12, 4/4/12, 4/6/12, 4/8//12, 7/9/12, 7/22/12 must be produced since they do not involve the seeking or giving of legal advice.

## CONCLUSION

The plaintiff is ordered to provide the emails as required by this Opinion. The Orders of October 31, 2013 [78] and November 13, 2013 [81] are superceded by this Opinion to the extent they are inconsistent with this Opinion. Whatever emails that are produced pursuant to this Opinion shall

not be used outside this litigation, including Ms. Marrero's case against the FOP.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 5/21/14