**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARY PAT MCCULLOUGH** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 12 C 9359** |
| v. ) | |
| ) | |
| **FRATERNAL ORDER OF POLICE,** ) | **Judge John J. Tharp, Jr.** |
| **CHICAGO LODGE 7** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Mary Pat McCullough, was terminated from her employment as a secretary to the President of the Fraternal Order of Police, Chicago Lodge 7 ("FOP") on April 5, 2011. Soon after her termination, McCullough filed a charge of discrimination with the EEOC, alleging that she and other female employees were subjected to sexual harassment and a hostile work environment by management and other employees. On November 21, 2012, McCullough filed a timely complaint in federal court asserting violations of Title VII for sex discrimination and retaliation, as well as corresponding state law claims. Fact discovery closed on October 31, 2013. Now before this Court is McCullough's Motion to Preclude Certain Claims and/or Defenses (Dkt. 75). For the reasons discussed below, the Court grants the motion in part.

I.     **BACKGROUND**

Mary Pat McCullough held her position as secretary to the President from June 2002 until April 5, 2011. She alleges that during her employment, she and other female employees were subjected to a hostile working environment because of their sex involving (1) the repeated use by management and employees of language that was offensive and/or degrading to women; (2) the forwarding of emails containing vulgar and obscene content; and (3) comments of a sexual

nature and/or about female employees' bodies. First Am. Compl. (Dkt. 39) ¶ 10. McCullough further alleges that she regularly complained to her supervisors and the FOP's President about the harassment, but that FOP failed and refused to take prompt and appropriate action to correct the harassment. *Id.* ¶¶ 11-12.

On or about December 15, 2010, one of McCullough's co-workers, Marie Marrero, complained internally, in writing, that she was being subjected to sexual harassment. *Id.* ¶ 13. FOP initiated an investigation, which was conducted by the law firm of Asher, Gittler & D'Alba Ltd. (the "D'Alba Investigation"). Pl.'s Mot. ¶¶ 4-5, 7; Def.'s Resp. at 1-2. FOP reports that it hired the outside law firm "in response to a complaint of sexual harassment by an employee … After receiving the sexual harassment complaint, Defendant's President contacted the law firm … due to the prospect of litigation." Def.'s Resp. at 1-2. D'Alba conducted interviews, including of McCullough on March 16, 2011. Pl.'s Mot. ¶ 4. McCullough asserts that during her interview, she engaged in statutorily protected activity, "including opposing discrimination prohibited by Title VII." *Id.* McCullough also asserts that D'Alba drafted a report regarding the investigation (the "D'Alba report") and gave it to FOP on or about March 28, 2011. *Id.* ¶ 5. McCullough was terminated on April 5, one week later. *Id.* ¶ 6. FOP asserts that D'Alba "conducted confidential interviews and prepared a report for Defendant that contained legal analysis of the investigation." Def.'s Resp. at 2. FOP adds that the report was marked "privileged and confidential" and was only viewed by three management-level employees. *Id.*

## II. ANALYSIS

Before this Court is the plaintiff's Motion to Preclude Certain Claims and/or Defenses. McCullough broadly requests that this Court preclude FOP from offering evidence in this case that (1) FOP took reasonable care to promptly correct the behavior reported by Marrero and that

it did correct that behavior; (2) FOP took reasonable steps to investigate the behavior reported by Marrero and that it did investigate that behavior; (3) FOP took reasonable steps to determine whether or not the behavior reported by Marrero had occurred and that it did make that determination; and (4) McCullough did not object to sexual harassment during the D'Alba investigation.

### A. The Parties' Positions.

During fact discovery, FOP claimed at several junctures that details regarding the D'Alba investigation and report were protected by the attorney-client and work product privileges. *See, e.g.,* Def.'s First Am. Answer to Pl.'s First Set of Interrog. (Dkt. 75-1) ¶¶ 7-8, 12-14, 18, 20-21, 24. Further, FOP has objected to discovery requests seeking to determine whether FOP would offer evidence at summary judgment or trial about what steps it took to investigate Marrero's complaint. *See, e.g.,* Def.'s Resp. (Dkt. 75-2) ¶¶ 10-19. FOP stated that its "current intentions or thoughts on what it may or may not introduce as evidence at summary judgment or trial are not relevant or probative of anything … To that end, Defendant has not yet fully determined what evidence it will offer in this case." *Id.* ¶¶ 10-11, 14-15, 18-19. FOP has represented, however, that it would not "voluntarily inject" into the case issues such as whether FOP took reasonable care to promptly correct the alleged harassment and whether it took reasonable steps to investigate the allegations. *Id.* ¶¶ 10, 12. Further, FOP raised standing objections to deposition questions regarding the D'Alba investigation and FOP witnesses refused to answer deposition questions on the subject (the present motion does not reflect whether McCullough moved to compel responses to such questions).

McCullough argues that the D'Alba investigation and report is not protected by the attorney-client privilege, in particular because FOP took the report to another law firm to

3

consider FOP's next steps and because FOP described the report as factual in nature during the parties' administrative proceedings. Pl.'s Reply (Dkt. 87) at 3. As for the work product privilege, McCullough argues that the D'Alba investigation and report are not protected because there is no evidence that litigation was threatened before McCullough and Marrero filed EEOC charges, among other reasons. *Id.* at 4.

McCullough also argues, alternatively, that if the D'Alba investigation and report are privileged, then FOP has waived its privileges by making information acquired through the D'Alba investigation "essential to its defense" and by "denying the fact that Plaintiff complained of sexual harassment during the D'Alba investigation …." Pl.'s Mot. ¶ 12. McCullough also points out that FOP admitted that there is a possibility that the investigation may come into play during summary judgment or at trial; FOP hedged on this point in its responses to McCullough's Requests to Admit and denied that it would *not* offer evidence on these subjects. Def.'s Resp. ¶¶ 10-11, 14-15, 18-19. McCullough's concern is essentially that FOP will offer evidence relating to the D'Alba investigation to establish that it took reasonable steps to investigate and correct the behavior reported by Marrero, all the while not disclosing to McCullough the content of the investigation and resulting report. Pl.'s Reply at 6. McCullough is requesting either an order precluding FOP from offering evidence or making claims or inferences on these subjects, or an order that FOP respond to certain of McCullough's First Set of Interrogatories.

FOP responds that the D'Alba Report is a privileged and confidential attorney-client communication and also constitutes protected attorney work product. FOP further maintains that it has not waived the attorney client or work product privileges because FOP has not injected a new factual or legal issue into the case, such as through an affirmative defense. Def.'s Resp.

4

(Dkt. 86) at 3. Rather, FOP argues, it has simply denied McCullough's claims, which does not result in waiver. *Id.*

### B. McCullough's Motion is Granted with Certain Parameters.

The Court grants McCullough's Motion to Preclude Certain Claims and/or Defenses, but sets certain parameters to guide the parties as they approach the later stages of this litigation.

First, the Court finds that the D'Alba Report (and associated notes and memoranda) is protected by the attorney client and work product privileges. FOP asserts that the report contains "legal analysis and advice" from D'Alba, which was hired "in response to a complaint of sexual harassment by an employee" and "due to the prospect of litigation." Def.'s Resp. at 1. The firm conducted "confidential interviews," prepared the report, marked the report "privileged and confidential," and shared the report with only certain FOP management employees and no third parties. *Id.* at 1-2. The question at hand is whether D'Alba was retained to conduct the investigation as attorneys. *See Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2009) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981), which explained that factual investigations performed by attorneys *as attorneys* "fall comfortably" within the attorney-client privilege). The conduct of the D'Alba attorneys during their investigation is persuasive; the attorneys conducted confidential interviews, marked their report "privileged and confidential," and restricted access by third parties to the report. *See id.* at 620 (describing conduct of investigating attorney as relevant to determination that resulting notes and memoranda were privileged).

As for the work product privilege, that protection "applies to attorney-led investigations when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id.* at 622 (citation omitted). This Court has no reason to disbelieve FOP

when it asserts that it called D'Alba "in response to a complaint of sexual harassment by an employee … After receiving the sexual harassment complaint, Defendant's President contacted the law firm … due to the prospect of litigation." Def.'s Resp. at 1-2. Even if FOP was responding to other concerns, and despite the fact that D'Alba was not retained to be FOP's litigation counsel, D'Alba's report was prepared "with an eye toward" anticipated litigation after Marrero complained about being subjected to sexual harassment. *See Sandra T.E.*, 600 F.3d at 622 (finding that notes and memoranda drafted by law firm were protected as work product despite the fact that law firm was not litigation counsel and school board had several motivations in hiring law firm to investigate misconduct).

Although covered by privilege, however, FOP cannot rely on the D'Alba investigation or on its report during summary judgment or at trial without waiving its privilege. To the extent McCullough proves that her colleagues engaged in sexual harassment, it is her burden to prove FOP's liability by proving that FOP did not take reasonable steps to correct the situation. *See Erickson v. Wisc. Dep't of Corrs.*, 469 F.3d 600, 603 (7th Cir. 2006) (stating negligence test and plaintiff's burden for employer liability for harassment by coworkers); *Zimmerman v. Cook Cnty. Sheriff's Dep't.*, 96 F.3d 1017, 1018 (7th Cir. 1996) (stating that to show liability of an employer for sexual harassment by one nonsupervisory employee of another, the plaintiff must prove that the employer was negligent in having failed to discover and prevent it).[1] Having asserted privilege to prevent discovery of the D'Alba Report, FOP cannot introduce evidence regarding the fact or contents of the D'Alba investigation or the ensuing report in an attempt to defend itself against McCullough's claim that FOP did not take reasonable corrective action. Further,

---

[1] To the extent McCullough proves that a supervisor engaged in sexual harassment, FOP would be strictly liable. *Erickson*, 469 F.3d at 603 (stating strict liability standard for employer liability for harassment by supervisors); *Zimmerman*, 96 F.3d at 1018 (same).

any claim by FOP that McCullough did not object to sexual harassment during the D'Alba investigation will be deemed a waiver of its privilege as to the investigation and report because it will have placed the investigation and report at issue (which it has not done yet).

FOP will not, however, be precluded from offering evidence of corrective steps that were unrelated to the D'Alba investigation or even evidence of corrective steps that were suggested in the D'Alba report, as long as FOP does not disclose the fact of the D'Alba investigation and report. FOP does not waive its privileges by offering evidence regarding the reasonableness of its conduct in response to McCullough's allegations, as long as that evidence does not explicitly pertain to the D'Alba investigation and/or report. In other words, FOP cannot refer to the D'Alba investigation (or the D'Alba report) as a corrective step itself without waiving its privilege. FOP *can* refer to *other* corrective steps, even if those corrective steps originated in the D'Alba report (again, only if the source is kept hidden).

\*     \*     \*

For the reasons set forth above, McCullough's Motion to Preclude Certain Claims and/or Defenses [75] is granted in part.

Entered: June 11, 2014

_____
John J. Tharp, Jr.
United States District Judge